## The Cumberland Valley Railroad Company *versus* McLanahan.

1. When an act of incorporation provides a remedy for damages by the construction of a work of internal improvement, an injured party cannot maintain a common-law action.

2. The act of incorporation prohibited a railroad company from holding land except for " the construction of the road or for depots, toll-houses and other necessary works," and authorized the company " to make, erect and establish all works, edifices and devices that may be deemed expedient," to carry " into effect the objects of their incorporation;" to enter in and upon and occupy for the purpose of making the road " any land, &c., the road not to be more than 5 rods wide ;" and provided for the assessment of damages for taking land, &c. The company could occupy to the width of 5 rods and no more for that purpose, and such erections as were necessary for the railroad as such were included by implication : this would not include a warehouse.

3. Although a railroad company has a license from one tenant in common, ejectment will lie by the other tenant for land occupied by them for a purpose not authorized by their charter.

4. A tenant in common conveyed an undivided moiety of his land; a railroad company afterwards erected a warehouse on it; the other tenant then conveyed his half to the same grantee, reciting that the company had erected the warehouse, and in consideration were to allow a passage over their other ground to other land of the grantors, their heirs and assigns—the grantee used the right of way. *Held,* that this was evidence for the jury of ratification by the grantee of the license to the company.

5. Valuable improvements having been made on the faith of the license, it was not within the Statute of Frauds, and a subsequent ratification by parol was equivalent to precedent authority.

6. The warehouse was burnt down and re-erected on the same site. If the plaintiff had knowledge that the company were re-erecting it, and gave no notice of his claim, and the company believed that he sanctioned the original arrangement for erecting the warehouse, he was estopped.

May 13th 1868.    Before THOMPSON, C. J., STRONG, READ, AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *Franklin county :* Of May Term 1868.   No. 46.

This was an action of ejectment, brought July 24th 1866, by John B. McLanahan against The Cumberland Valley Railroad Company.   After bringing the suit the plaintiff specified his claim to be for 1501 square feet in Chambersburg, on which a corner of defendants' warehouse was built.

The premises were part of a piece of land which, on the 13th of December 1839, belonged to Margaret McKnight.   On that day she conveyed to Thomas G. McCulloh and George Chambers. McCulloh died about September 1848.   On the 1st of August 1850, his executors, S. D. Culbertson, James L. Black and John D. Grier, conveyed an undivided half of the piece to the plaintiff: on the 16th of January 1855, Judge Chambers conveyed the other undivided half to the plaintiff.   The deed from Chambers contains this clause : " The said Cumberland Valley Railroad Company having erected a corner of their brick warehouse on the same, and in consideration, were to allow the use of the ground south of the warehouse for a road or way from Second street in said borough to the premises above described, to the proprietors of said described piece of land, their heirs and assigns."   It further appeared by the cross-examination of one of the plaintiff's witnesses, that "if the company is entitled to hold 2½ perches from the centre of the road, there would be 430 square feet outside of the line."

The defendants read the deposition of Daniel Tyler.   He testified : between 1848 and 1851, he, as engineer and agent of the defendants with full powers, &c., reconstructed the defendants' road, depots, &c.   When the warehouse was located it was found a corner would project on to the land of Chambers and McCulloh,

and before it was built the right to occupy the land was obtained from Chambers and the legal representative of McCulloh, by agreement between them and the company, the consideration being a right of way over other land of the company from the land of McCulloh and Chambers to the street: the parties to the agreement were Chambers and a person whose name he did not recollect, but whom he knew to be the legal representative of McCulloh's estate. He supposed the agreement had been reduced to writing, but he could not speak positively: the warehouse was built on its present site in pursuance of the agreement. There was other evidence tending to show the existence of an agreement, search for it and that it could not be found. There was evidence for defendant of the building of the warehouse some time in 1850: of its having been burned by the rebels July 30th 1864, and rebuilt on the original foundations in the spring of 1865: also that the plaintiff lived in Chambersburg at that time, and for several years before; that a lot belonging to plaintiff and adjoining the warehouse was leased for a coal and lumber yard; the lessees passed over the company's ground; there was no way for wagons to get to the yard except over the company's ground, which was the regular passage way to it. They also gave evidence that Culbertson, one of the executors, &c., of McCulloh, was present when the ground for the warehouse was "staked off." They called the plaintiff, who testified: "I was not aware of this agreement between McCulloh's executors and the railroad company. I accepted the deed from Judge Chambers. I did not know at the time I bought from the executors of McCulloh that the company had any agreement with them. No warehouse built there when I purchased. I lived in Chambersburg since 1845. I know the warehouse was burnt, and I have seen that they rebuilt it. I gave them no notice that I claimed the land. When I bought from Chambers I put grain in and raised five successive crops. When I quit farming, the soldiers took possession and burnt the fences. Allison Eyster rented it and so did Melhorn. We passed over the vacant lot of the company to my land. I claimed a right of way, owing to the privileges the company had to build a part of warehouse under the deed of Mr. Chambers."

The plaintiff, in rebuttal, gave evidence by Black and Grier, two of McCulloh's executors, that they had made no agreement with the defendants for the erection of the warehouse: he further gave evidence that the warehouse was built after August 1st 1850.

The defendant asked the court to charge:—

1. By the charter of The Cumberland Valley Railroad Company, it had the right to take and occupy for its road and business five rods of land. And if, in the erection of the warehouse of the company, any portion of the plaintiff's land was occupied, for so

much of the land as falls within the five rods there can be no recovery in ejectment. The plaintiff's remedy is for the assessment of damages under the charter of the company.

2. The evidence of John B. McLanahan shows that he had knowledge, by the terms of the deed from Hon. George Chambers, that the company claimed to have procured the right to project their warehouse over the land in dispute from the proprietors of the land, in consideration of having given to said proprietors a right of way over other land of the company, to the lot now owned by the plaintiff; and it further appearing, from the testimony of Mr. McLanahan, that he and his tenants claimed and used the right of way, from that time to the present, under the alleged arrangement; and that the warehouse was destroyed by fire on 30th July 1864, and re-erected before this suit, with his knowledge, and without any notice by him to the company, that it should not erect the warehouse on his land—all these facts constitute sufficient evidence of a ratification, by the plaintiff, of the arrangement made before he purchased, even if such arrangement was ineffectual on account of having been made by one of the executors of Thomas G. McCulloh.

3. If the plaintiff meant to repudiate the arrangement, and had knowledge that the company was re-erecting its warehouse partly on his land, before bringing the suit, and he gave no notice of his claim, and the company labored under the honest belief that he was satisfied with, and had sanctioned the previous arrangement made before the warehouse was originally built, he is estopped from recovering in this case.

King, P. J., after referring to the facts, charged:—

"The legal title of the plaintiff is not disputed, but his right to a verdict is denied on several grounds set forth in the defendant's points which we will notice in their order.

"1. It is undeniable that the company might occupy so much of plaintiff's land as was necessary for the reconstruction of its railway, sidings, turnouts, depots and stations by paying adequate compensation therefor; but in order to obtain this right, a strict compliance with the several Acts of Assembly, on the part of the company, was necessary, and must be shown by defendant. Having failed to show it, we refuse to affirm this point.

"2. The plaintiff having accepted a deed from Mr. Chambers for the undivided half of the tract of land, embracing within its limits the land in dispute, in which the right of the railroad company to erect its warehouse in consideration of a right of way over other land of the company is distinctly recognised, he cannot now be permitted to repudiate the arrangement between Mr. Chambers and the company, but he will be bound by it, at least, so far as it relates to the interest he acquired under that deed. It is not so clear, however, that his acceptance of that deed will

preclude him from asserting his title to the whole of the interest he acquired, five years before, from the executors of T. G. Mc-Culloh. We do not see how the clause in the deed from Mr. Chambers proves that Mr. McCulloh was a party to the arrangement, and affects plaintiff with notice of it. There is no proof that any such arrangement existed in the lifetime of Mr. Mc-Culloh, or that his executors, as such, ever entered into any such arrangement with the company, even if they had the power to do so.

" 3. If there was any evidence that the plaintiff stood by while the defendant's agents were re-erecting the warehouse, and were thus encouraged to re-erect it, there might be some plausibility in this point. The plaintiff, being called to the stand by his opponent, testified that he knew the house was burnt, and that he had seen that it was rebuilt, but he does not say that he saw it while it was being re-erected. The fact that he was a resident of Chambersburg is not enough to affect him with the knowledge that the house was being rebuilt, and thus make it his duty to notify the defendant of his claim to the land.

" Having expressed these opinions, we instruct the jury to render 'a verdict for the plaintiff for the undivided half of 1501 square feet of land, the land in dispute."

The verdict was for the plaintiff for an undivided half of the land in dispute.

The defendants took a writ of error, and assigned for error the answers of the court to their points, and instructing the jury to find for the plaintiff for one-half of the land in dispute.

*T. B. Kennedy* and *J. McD. Sharpe*, for plaintiff in error.—The act of incorporation of April 2d 1821 gave the company the right to take the land to the extent of five rods, and provides for assessment of damages. This remedy is exclusive: 1 Redfield on Railways 336; McKinney v. Monongahela Nav. Co., 6 Harris 65; Harrisburg v. Crangle, 3 W. & S. 464. Ejectment or partition is not an appropriate remedy: McKee v. Straub, 3 Binn. 3; Marks v. Marks, 9 Watts 410; Law v. Patterson, 1 W. & S. 184; Big Mount. Imp. Co.'s Appl. 4 P. F. Smith 361. The plaintiff's acts estopped him: Adlum v. Yard, 1 Rawle 171; Ingram v. Hertz, 12 Wright 381; Campbell v. McCoy, 7 Casey 264; Anon. 2 Eq. Cas. Ab. 522; Le Fevre v. Le Fevre, 4 S. & R. 241; Rerick v. Kern, 14 Id. 267; McKellip v. McIlhenny, 4 Watts 317; Arnold v. Cornman, 14 Wright 361; Morrison v. Howell, 5 Id. 58; Huff v. McCauley, 3 P. F. Smith 206; Swartz v. Swarts, 4 Barr 353; Ebner v. Stichter, 7 Harris 19; Pickard v. Sears, 6 A. & E. 469; Wass v. Van Swearingen, 10 S. & R. 146; Buchanan v. Moore, 13 Id. 304; Epley v. Witherow, 7 Watts 165.

[Cumberland Valley Railroad Co. *v.* McLanahan.]

There was no paper-book nor oral argument for defendant in error.

The opinion of the court was delivered, May 20th 1868, by

SHARSWOOD, J.—The 1st assignment of error relates to the form of action. It is a perfectly well-settled principle that when the legislature has provided a specific remedy for the recovery of damages for injuries sustained by the construction of a work of internal improvement by a corporation, a party injured cannot have recourse to a common-law action: McKinney *v.* The Monongahela Nav. Co., 2 Harris 65. The defendants below were incorporated by the Act of April 2d 1831, Pamph L. 373, entitled "An act to incorporate the Cumberland Valley Railroad Company." It gives to the company no powers "except such as may be necessary or incident to the making and using of the said railroad," and specially declares that "the said company shall at no time hold any land for any other purpose than the construction of the said railroad, or for depots, toll-houses or other necessary works." By the 12th section they have power to survey, lay down, ascertain, mark and fix such route as they shall deem expedient for said railroad, the said road not to be more than five rods wide. By the 14th section "it shall and may be lawful for the company hereby incorporated to make, erect and establish a double railroad on the route laid out as aforesaid; and they are also hereby empowered to erect, make and establish all works, edifices and devices to such railroad as may by the said company be deemed expedient for the purpose of carrying into effect the objects of their incorporation; and also to contract or agree with the owner or owners for the purchase of any lands or tenements which may be necessary for the purpose of constructing and using the said railroad." And finally, by the 15th section, they have power "to enter in and upon and occupy for the purpose of making said railroad" any land upon which the same may be located, and if the owner refuses to permit such entry and occupation, and the parties cannot agree, they shall appoint appraisers, and if they cannot agree upon the appraisers, the Court of Common Pleas shall make the appointment. From this recital of the provisions of the charter on this subject it would seem sufficiently clear that while the company may have had power to purchase and hold land for the general purpose of "erecting, making and establishing all works, edifices and devices to such railroad as may by the said company be deemed expedient for the purpose of carrying into effect the object of their incorporation," yet that their authority to enter upon and occupy land without the consent of the owner is confined to such as is required "for the purpose of making such railroad." With this end in view they can enter and occupy to the extent of five rods in width, and no

[Cumberland Valley Railroad Co. *v.* McLanahan.]

more; for that purpose and no other.   Whatever buildings and erections were necessary to the railroad as such—without which it would not be a complete and perfect railroad—fit for use—are included by implication.   Such would be depots for the reception and landing of passengers and freights, wood and water stations, toll-houses, watch-houses and others of similar character.   But these words cannot be extended by any latitude of construction to comprehend a warehouse—a place for the storing and safe-keeping of goods—any more than it can be to the offices and residences of the officers and employees of the corporation.   This court has often had occasion to consider the question of what is to be regarded as forming a necessary part of a railroad—generally in cases in which claims have been made by the companies to hold their property exempt from county or municipal taxation.   The cases are collected in the opinion of Judge Pearson, in The Lackawanna Iron Co. *v.* Luzerne County, 6 Wright 428, and the result of them stated to be, that the line of road and ground occupied thereby, and the buildings immediately necessary for its enjoyment, not merely useful or convenient, are exempt; whilst all other property, though erected for the convenience of the company and to promote its trade and business, is subject to taxation.   The opinion of the judge below in that case was adopted by the Supreme Court.   The principle of it has been reaffirmed in subsequent cases not yet reported, and may now be considered as firmly established.

If this be so, then the taking of the plaintiff's land for the erection of this warehouse was not within the power conferred on the company by the 15th section of their charter.   They could only acquire title or a right to use it for that purpose by agreement with the owners.   The refusal of the court below to affirm the 1st point presented by the defendants below was right. It is perhaps unnecessary to go further, as nothing more is contained in the specification of error than that refusal; but as the cause is to be remitted for another trial, it will be proper to notice and dispose of another ground of objection made to the remedy by action of ejectment adopted in this case.   It is contended that as the defendants below without question had a license from Judge Chambers, who was one of the tenants in common of the lot of ground in question, which gave them a right to occupy and use the land, ejectment cannot be maintained by the plaintiff below, the other tenant in common, for his undivided moiety..   It is urged also that the right of the defendants under the grant from Judge Chambers being to an easement, or more properly perhaps a license to occupy, ejectment is not the proper remedy—they are not the tenants of the land, and that if the plaintiff below recovers, the sheriff under the *habere facias* cannot put him in possession.   But it is to be remembered that ejectment is not a

[Cumberland Valley Railroad Co. *v.* McLanahan.]

real, but a mere possessory action.   The defendant is the occupier, not the tenant of the freehold.   If, therefore, as for the purposes of the argument we must assume, the company had no grant or authority from the plaintiff below, their occupation, as far as he was concerned, if it amounted to an ouster, was a wrongful disseisin or dispossession of the land itself.   The plaintiff below had in that aspect of the case nothing whatever to do with the nature of the right acquired by the company under Judge Chambers.   Was then the exclusive occupation and use of the ground by the company by building the warehouse an actual ouster of the plaintiff?   If it was, he can maintain ejectment.   That it was, no doubt, we think, can remain after Law *v.* Patterson, 1 W. & S. 184; McMahan *v.* McMahan, 1 Harris 376; Hill *v.* Hill, 7 Wright 521.

We are of the opinion, however, that there was error in the answers of the court to the 2d and 3d points of the defendants below, and that consequently the court also erred in the direction to the jury to find for the plaintiff as complained of in the 4th assignment.   The 2d point, indeed, might have been met by a flat refusal; for it assumed as actually proved the main facts of the case, and asked the court to charge that they constituted sufficient evidence of ratification by the plaintiff of the arrangement made before he purchased.   The court, however, did not take this course, but answered the point, saying to the jury: " It is not so clear that his (plaintiff's) acceptance of that deed (Chambers to him) will preclude him from asserting his title to the whole of the interest he acquired five years before from the executors of T. G. McCulloh.   We do not see how the clause in the deed from Mr. Chambers proves that Mr. McCulloh was a party to the arrangement, and affects plaintiff with notice of it."   The deed to which reference is here made from George Chambers to the plaintiff below contained a distinct and unequivocal recital that the defendants had erected a corner of their brick warehouse on the premises, and that the consideration of the permission to them so to do was that they should " allow the ground south of the warehouse for a road or way from Second street in said borough to the premises above described to the proprietors of the said described piece of land, their heirs and assigns."   It will be observed that the consideration is stated as moving not to himself (Chambers) alone, but to all the proprietors.   If the plaintiff below, with full knowledge of such a grant having been made, whether by George Chambers alone, or in conjunction with the executors of McCulloh, availed himself of and enjoyed the right of way, which was the consideration of the grant, it was evidence which ought to have been submitted to the jury of a ratification by him of the license to the company.   It was a license on the faith of which valuable improvements had been made by the

grantees, and therefore not within the Statute of Frauds and irrevocable; and subsequent ratification by parol must be held to be equivalent to a precedent authority: Le Fevre *v.* Lefevre, 4 S. & R. 241; Rerick *v.* Kern, 14 S. & R. 267; McKellip *v.* McIlhenny, 4 Watts 317; Swartz *v.* Swartz, 4 Barr 353. Of the use and enjoyment of the right of way by the plaintiff there was abundant evidence: among the rest, the testimony of the plaintiff himself, who was examined as a witness. He said: "We passed over the vacant lot of the company to my land. I claimed a right of way, owing to the privilege the company had to build a part of warehouse under the deed of Mr. Chambers." The answer of the court denies any operation or effect whatever. to these facts, if substantiated to the satisfaction of the jury. We think that in this there was error.

We are of opinion, also, that the 3d point of the defendants below ought to have been affirmed: that "if the plaintiff meant to repudiate the arrangement, and had knowledge that the company was re-erecting its warehouse partly on his land, before bringing the suit, and he gave no notice of his claim, and the company labored under the honest belief that he was satisfied with and had sanctioned the previous arrangement made before the warehouse was originally built, he is estopped from a recovery in this case." The learned judge did not question the law as proposed, but denied that there was evidence in the cause to which it could be applied. It is certainly true that it would not be enough to show that the plaintiff resided in the same town, to authorize the jury to draw the inference that he knew of the improvement. But there was something more than that here. Mr. McLanahan himself testified as follows: "I lived in Chambersburg since 1845. I knew the warehouse was burnt, and I have seen that they rebuilt it. I gave them no notice that I claimed the land." The learned judge, in commenting on this evidence, remarked to the jury "that he does not say that he saw it while it was being re-erected." This criticism upon the oral testimony—applying the strictest grammatical interpretation to the words—was no reason for taking the case from the jury. It was for them to say what the witness meant when he said, "I have seen that they rebuilt it." Whether he used the word "rebuilt" as the perfect or imperfect past—that they "rebuilt or were rebuilding" it—which in common speech are often confounded—especially as he had not given a more particular denial of so material a fact—was for the jury. That this conduct on the part of the plaintiff was an estoppel if believed, the cases are numerous, clear and consistent. There seem to have been here all the requisites as laid down in Woods *v.* Wilson, 1 Wright 379; and one of the latest cases in our reports, Arnold *v.* Cornman, 14 Wright 361, is very much in point.

Judgment reversed, and *venire facias de novo* awarded.