## Michael Redmond, Appellant, *v.* The Excelsior Saving Fund and Loan Association.

*Estoppel—Silence—Permitting the erection of a building.*

A property owner living in his own property, who stands by and permits a building to be erected over an alley between the two lots, and into and against his own building, and makes no objection until five years thereafter, is estopped from denying that he consented to the method of building the adjoining house.

Argued Jan. 29, 1900. Appeal, No. 317, Jan. T., 1899, by plaintiff, from judgment of C. P. Montgomery Co., June T., 1898, No. 44, on verdict for defendant. Before GREEN, C. J., McCOLLUM, DEAN, FELL and MESTREZAT, JJ. Affirmed.

Ejectment for a strip of land in the borough of Conshohocken. Before WEAND, J.

The jury returned the following special verdict:

Michael Redmond being the owner of a tract of land in the borough of Conshohocken sold part thereof to Rose McAdams, his sister-in-law, who commenced to build on her own property; Michael Redmond then consented and agreed that the building of Rose McAdams from the second story up should extend over the alley way between the properties and into and against Redmond's house, and it was so built; Redmond knew and consented to this method of building, demanded no compensation and offered no objections thereto until six years afterwards; during the building of McAdams house plaintiff lived in his own house next door. If the court should be of opinion that under these facts plaintiff is entitled to recover, then judgment is to be entered in favor of the plaintiff, otherwise we find for the defendant.

The evidence in support of an express agreement is fully stated in the opinion of the Supreme Court.

Judgment was entered for defendant on the verdict.

*Error assigned* was in entering judgment for defendant.

*Henry M. Tracy* for appellant.—An interest in land arising out of it, whether corporeal or incorporeal, must be in grant; it can pass only by deed; the statute of frauds is applicable to all such interests: Huff v. McCauley, 53 Pa. 206; McGibbeny v. Burmaster, 53 Pa. 332; Hart v. Carroll, 85 Pa. 508; May v. Prendergast, 12 Pa. C. C. R. 220.

The evidence was not sufficient to take the case out of the statute of frauds, and should not have been submitted to the jury: Taylor v. Henderson, 38 Pa. 60; Edwards v. Morgan, 100 Pa. 330; Overmeyer v. Koerner, 81* Pa. 517; Poorman v. Kilgore, 26 Pa. 365; Ackerman v. Fisher, 57 Pa. 457; Woods v. Wilson, 37 Pa. 379.

*J. P. Hale Jenkins,* for appellee.—Where one encourages another to expend his money and labor in improving land, he will not afterward be permitted to take it from the other, although he has an older and better title for it, and even although

his encouragement is given in ignorance of his own rights: McKelvey v. Truby, 4 W. & S. 323; Carr v. Wallace, 7 Watts, 394; Miller v. Miller, 60 Pa. 16; Woodward v. Tudor, 81* Pa. 382; Putnam v. Tyler, 117 Pa. 570; Arnold v. Cornman, 50 Pa. 361; Meason v. Kaine, 67 Pa. 133; Cumberland Valley R. R. Co. v. McLanahan, 59 Pa. 23.

OPINION BY MR. CHIEF JUSTICE GREEN, February 19, 1900:

The special verdict determined the facts, and if upon those facts an estoppel was raised against the plaintiff which prohibited him from setting up his legal title the judgment should be sustained. It was found by the verdict that Redmond, the plaintiff, did agree, while the building was going up, that the building of Miss McAdams should extend over the alley which divided the plaintiff's house from the house in question, and into and against the plaintiff's house; that Redmond knew of and consented to this method of building, demanded no compensation and offered no objection thereto until six years afterwards, and that during all this time, and while the building was going up, the plaintiff lived in his own house next door. We think the testimony was quite sufficient to sustain the verdict. The testimony of Miss McAdams was very full, precise, clear and positive as to the fact of the agreement. Hallowell's testimony, while it was not so precise nor so clear as that of Miss McAdams, was quite corroborative in its character of the testimony of Miss McAdams. He said, "after the building was under way, during the course of the construction of the building, there was a conversation between Redmond and Rose McAdams as to the building her house against his side wall. It was talked of. I do not know what was said. I was under the impression that Mr. Redmond wanted to run it over, but I cannot say positive about that. . . . Certainly Mr. Redmond must have agreed that the house should be put over against his wall, or it would not have been done. He made no objection to me at all. He was present every day when I was building it. He saw I was building against his property. . . . He was there every day. He lived next door, in the house that it was joined to. I never knew during the progress of the work that he objected to this."

All of this testimony is most highly corroborative of the testimony of Miss McAdams. He knew there was a conversation

between the parties, and that it was upon this very subject. But, above all, he was the contractor who erected the building, and necessarily knew just what he was doing, and he therefore said, " Certainly, Mr. Redmond must have agreed that the house should be put over against his wall, or it would not have been done." And this is the only rational conclusion that can be drawn from the circumstances. He further says that Redmond made no objection to it, and that fact is alone sufficient in such circumstances to raise an estoppel, because mere silence is equivalent to express consent in such a situation. But the testimony of Redmond himself is also strongly corroborative in some of its most important facts. It is true, he says he never gave permission, but he also says he came home on the evening of the day when the joists were put into his wall and testified, " I said to her when I sat down to my supper, ' You said last night you were not going into my wall.' She says, ' Mr. Hallowell says it will make a better job on that side.' I says, ' Whenever you want to sell it you will make a great mistake.' She said, ' it was never going to be sold.' She said, ' I would never want it, but my children would fall into it.' She says, ' I know you will never want it.' She was my sister-in-law and was living in my house at that time. She lived in the house until her own was finished. . . . I never gave her permission. She took that permission. . . . I had a conversation with Rose and Mr. Hallowell before the joists were put up against my house, before they were put into my wall. . . . I did not agree to it. I did not agree to nothing. . . . When she had a chance to sell this property, about five years ago, was the first time I made any claim, because she had told me to be quiet, it would come to my own children, that she was not going to sell the property. That is the first time I made the complaint, and as soon as I found she was going to sell it, I stopped it.". Thus it appears by the plaintiff's own testimony that, although he knew perfectly well that the building was extended over against his own all the time from the very commencement, and stood by and saw it done, he never made any objection to it until after he learned she was going to sell the property, some five years later. This is not mere silent acquiescence, it is affirmative proof of express acquiescence founded upon an expectation that his own children were to get the property some day in the future. Whether that expectation was disappointed

is a matter of no consequence. The fact of the expectation, and of no objection being made, is only consistent with actual acquiescence. But, in any event, it is quite enough to raise the estoppel. Upon every principle, if he did not agree, it was his duty to speak when the work was going on, and arrest it. Failing to do this, he can not be permitted to wait five years after the building was put up before his own eyes, and with his fullest knowledge, allowing all the expenditure to be made, without any protest or objection, and then set up a claim entirely inconsistent with all his previous conduct. It is almost unnecessary to cite the authorities. They are numerous and directly in point. In Arnold v. Corman, 50 Pa. 361, we held that where a defendant built a wall across an alleged way with the full knowledge of the plaintiff who saw the erection progressing day by day without complaint or assertion of a right, it was not error to submit his acts and conduct to the jury as evidence of an estoppel in pais. In Cumberland Valley R. R. Co. v. McLanahan 59 Pa. 23, we held that where plaintiff had knowledge of a building being erected and gave no notice of his claim he was estopped.

A party who stands by and sees a bona fide purchaser making valuable improvements upon the land in the neighborhood of which the former has resided for nearly twenty years, without giving notice of an equitable title in himself, will be estopped from subsequently asserting the same : Woods v. Wilson, 37 Pa. 379.

Silence will postpone a title when one knowing his own right should speak out. One led by such title ignorantly and innocently to rest on his title, believing it secure, and to expend money and make improvement without timely warning, will be protected by estoppel: Chapman v. Chapman, 59 Pa. 214.

One who by postive acts has induced another to purchase lands of which he is himself the true owner, is thereafter estopped from setting up his title against the purchaser, even though he acted in good faith and in ignorance of his own rights : Putman v. Tyler, 117 Pa. 570; Miller's Appeal, 84 Pa. 391.

It is unnecessary to extend the citations : the principle involved is so very familiar that no discussion is required. The assignments of error are dismissed.

Judgment affirmed.