## Little, Appellant, *v.* William F. Fearon & Co.

` *Contracts—Bankers and brokers—Pledge of securities—Unauthorized pledge—Rights of pledgee—Indicia of title—Estoppel.*

1. One who delivers stock to another, accompanied by a power of attorney for the transfer thereof, clothes such other person with apparent ownership, and a bona fide purchaser or pledgee for value thereof, from such apparent owner, obtains a good title.

2. If a party having a right stands by and sees another dealing with property in a manner inconsistent with that right, and makes no objection while the act is in progress, he cannot afterwards complain.

3. In an action against a stock broker to recover for the conversion of securities a verdict was properly directed for the defendant where it appeared that plaintiff delivered certain of the securities to her husband, accompanied by properly executed blank powers of attorney, which securities he in turn deposited with defendant as security for certain stock transactions in which the husband was engaged; that subsequently plaintiff delivered other securities similarly endorsed to defendant, receiving therefor a receipt in the name of her husband, in which it was stated that the securities were to be held as collateral for the account of plaintiff's husband, or any advances made to him thereafter, with power to rehypothecate the same, and plaintiff thereafter sent a check to defendant to strengthen the account, she could not subsequently complain of the action of defendant in applying said securities in payment of her husband's account, especially where it appeared that she made no claim against defendant for several years after the alleged conversion, and that she had accepted a note from her husband in payment of the securities delivered to him or for his account.

Argued Jan. 4, 1916.   Appeal, No. 262, Jan. T., 1914, by plaintiff, from judgment of C. P. No. 2, Philadelphia Co., Dec. T., 1910, No. 3957, on verdict for defendant in case of Mary Downing Little v. William F. Fearon, trading as William F. Fearon & Co.   Before BROWN, C. J., MESTREZAT, POTTER, STEWART, FRAZER and WALLING, JJ.   Affirmed.

Trespass to recover for the conversion of securities. Before SULZBERGER, P. J.

The opinion of the Supreme Court states the facts.

The court instructed the jury to find a verdict for defendant, upon which judgment was entered.   Plaintiff appealed.

*Errors assigned* were instructions to the jury, overruling the motion for new trial, and rulings on evidence.

*Joseph Hill Brinton,* for appellant.

*Joseph Gilfillan,* of *Graham & Gilfillan,* with him *Samuel M. Clement, Jr.,* for appellee.

OPINION BY MR. JUSTICE WALLING, March 6, 1916:

Defendant is a stockbroker, trading as William F. Fearon & Co.   Plaintiff's husband, Henry Ashton Little, is an attorney.   Between April, 1904, and June, 1906, Mr. Little had large stock transactions with defendant, of which the latter kept detailed account.   To protect the same it became necessary for Mr. Little to deposit funds and collateral; and in connection therewith he gave defendant an agreement as follows, viz:

"COLLATERAL AGREEMENT.

"I do hereby agree that as to any cash or securities which I have heretofore deposited with Wm. F. Fearon & Co., and also that whenever, from time to time, I

shall deposit with them any cash or securities to protect the said Wm. F. Fearon & Co., upon my account, for any past, present or future transaction, they shall have the right, and I do hereby authorize and empower them, to repledge or rehypothecate the securities or any part thereof, or to substitute therefor other securities of like tenor and amount, and to demand, from time to time, such additional cash or collateral as they may require. Upon my failure to promptly comply with the above-mentioned demand, I hereby authorize and empower Wm. F. Fearon & Co. to sell at their discretion, at any public sale or stock exchange, and they may become purchasers at any public or stockboard sale, any or all securities held by them on my account, holding me responsible for any deficiency, which deficiency I promise to pay on demand.

"HENRY ASHTON LITTLE."

"Philadelphia, Oct. 18, 1904."

The plaintiff, Mrs. Little, was the owner in her own right of certain securities, which she from time to time made transferable by endorsement or properly executed blank powers of attorney and placed in the hands of her husband for disposal, she now avers for her own benefit. In due course of business the husband to protect said account delivered such securities to defendant who gave Mr. Little credit therefor, and so far as appears received such of the securities as were deposited prior to December 15, 1905, in good faith and without notice of any alleged equity on behalf of plaintiff. On that day Mrs. Little having information that said securities in defendant's possession were liable to be lost, owing to the unsatisfactory state of Mr. Little's account, took and delivered to defendant additional securities properly authenticated for transfer, to strengthen said account and to protect the securities previously pledged. She testifies in effect that she then complained to defendant that her husband had made unauthorized use of her securities

in his said stock transactions and that defendant then assured her that said securities would not be used in connection with Mr. Little's future speculations but held until he could repay his said indebtedness./ Defendant in his testimony denies any such understanding, and, in. support of his denial, a receipt made by him on the day she delivered said securities is in evidence as follows, viz:

"Philadelphia, 12, 15, '05.
"Mr. H. Ashton Little,

"Dear Sir: We are this day in receipt from you of the following securities which we are to hold as collateral on your account, or for any advances we may make you, with power on our part to rehypothecate the same should we so desire. This receipt is not negotiable. Ten shares New York Central and Hudson River Railroad Company; 164 shares Acadia Coal Company, Limited; 1,000 St. Louis Iron Mountain & Southern Railway Company unifying and refunding 4%, 1929; 1,000 Leanington and St. Clair Railway Company, first mortgage, 4%, 1945. William F. Fearon & Company, Joyce."

This receipt was received by the plaintiff the next day, to wit: December 16, 1905, and retained by her until the trial of this case in 1914.

On January 2, 1906, plaintiff sent defendant a check of $4,702.75, to further strengthen said account. Securities, etc., which had formerly belonged to plaintiff, amounting in all to $42,753.75, were placed in Mr. Little's said account. However, his stock transactions, including some had after December 15, 1905, proved so unfortunate that all of said securities, except some unsaleable Acadia stock of the estimated value of eight hundred dollars, were exhausted and disposed of by defendant, prior to June 1, 1906. On that day Mr. Little gave defendant a note of $17,000.00 to settle the balance of the account.

Although plaintiff had full knowledge that defendant

had credited the said securities delivered on December 15, 1905, to Mr. Little's account, and that the receipt therefor stated that they were to be used for future as well as for past transactions, she made no objection or complaint. Six months later, on June 14, 1906, she received Mr. Little's note for the $42,753.75 in settlement for her said securities. In 1909 she caused judgment to be entered against her husband on said note and endeavored to collect the same. She made no claim or demand against defendant until July, 1909; and then at first only for the Acadia stock remaining in his possession.

The lower court directed a verdict for defendant, and from the judgment entered thereon plaintiff took this appeal. In our opinion the judgment should be sustained.

One who delivers stock to another accompanied by power of attorney for the transfer thereof clothes such other person with apparent ownership and a bona fide purchaser or pledgee for value thereof from such apparent owner obtains a good title. When Mrs. Little so delivered her securities to her husband she gave him apparent ownership which enabled him to make a valid pledge of the same to the defendant, and this is so regardless of any private understanding between Mr. and Mrs. Little, of which the pledgee had no notice: McManus v. Laughlin & King, 186 Pa. 498.

"One who has conferred upon another, by a written transfer, all the indicia of ownership of property, is estopped to assert title to it as against a third person who has in good faith purchased it for value from the apparent owner": Wood's App., 92 Pa. 379; Shattuck v. American Cement Company, 205 Pa. 197; See also Souder v. Columbia National Bank, 156 Pa. 374.

We have not overlooked appellant's earnest contention as to the alleged evidence tending to show that defendant had notice.

As to the transaction of December 15, 1905, plaintiff so long knowingly acquiesced in defendant's version

thereof as to be bound by it. She had immediate knowledge of the receipt given by defendant to Mr. Little showing that the securities then pledged were not only for past but for future advances, etc., and for two and a half years she made no objection and permitted defendant to dispose of the securities as authorized by said receipt; and it is now too late for her to set up an alleged verbal arrangement of different purport.

"If a party having a right stands by and sees another dealing with the property in a manner inconsistent with that right and makes no objection while the act is in progress he cannot afterwards complain": Duke of Leeds v. Earl of Amherst, 2 Phil. Ch. 117.

The fact that plaintiff settled with her husband and took his note for these securities supports defendant's contention.

As Mr. Little and not his wife was the pledgor of the securities in question the failure to give her notice of their intended sale does not seem important.

The assignments of error are overruled and the judgment is affirmed.