AUERBACH v. CORN EXCHANGE NAT. BANK & TRUST CO., PHILADEL-PHIA.

No. 8640.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 5, 1944.

Decided March 8, 1945.

Edward N. Polisher, of Philadelphia, Pa., for appellant.

S. Dee Hanson, of Washington, D. C. and Henry S. Drinker, of Philadelphia, Pa. (John E. Walsh, Albert M. Hoyt, Jr., and Philip Wallis, of Philadelphia, Pa., on the brief), for respondent.

Before GOODRICH and McLAUGHLIN, Circuit Judges, and FAKE, District Judge.

GOODRICH, Circuit Judge.

This action, brought to recover the value of certain securities, involves the application of the Pennsylvania deficiency judgment statute. The litigation is in federal court solely because of diversity of citizenship of the litigants. All the legally operative facts occurred in Pennsylvania. Local decisions control so far as applicable. Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. Both parties moved for summary judgment in the District Court, and the defendant's motion was granted. The plaintiff appeals. The factual picture is simple and clear; the legal question is more difficult. Plaintiff, Harry J. Auerbach, and defendant, Corn Exchange National Bank & Trust Company (hereinafter referred to as Corn Exchange), entered into an agreement on August 28, 1933, whereby Auerbach executed and delivered a bond and mortgage in the principal sum of $25,000 secured upon certain premises in the city of Philadelphia. The agreement further provided that various bonds and a life insurance policy be deposited as additional security and that should Auerbach default, Corn Exchange might sell the securities at public or private sale and apply the net proceeds therefrom on account of the principal of the bond, returning to him any overplus.

When Auerbach subsequently defaulted, Corn Exchange entered judgment against him, assessed damages in the sum of $24,-223.72, and issued a writ of fieri facias under which the premises were sold on July 7, 1941 at public sale for the sum of $95; the Sheriff thereafter executed and

delivered his deed poll for the premises to Corn Exchange, which on August 28, 1941 entered into an agreement for their sale to an independent purchaser for the sum of $19,000.[1] The net sum realized, $18,168.08, was credited against the judgment leaving a deficiency of $6,055.64.

Meanwhile the Pennsylvania Deficiency Judgments Act, P.L. 400, 12 P.S. § 2621.1 et seq., was approved and made effective on July 16, 1941.[2] It requires a plaintiff who sells real estate under a judgment for a price insufficient to satisfy the judgment, interest and costs, to file a petition to fix the fair market value of the real estate within six months from the date of the sale or the enactment of the law, whichever date is later.

Without filing such a petition, after advertised notice and written notice to plaintiff,[3] Corn Exchange on September 26, 1941 sold at public sale the collateral deposited with it by Auerbach as additional security and credited his balance with the $3,503.19 received.[4] When Auerbach's demand for the return of these securities on December 14, 1942, was not complied with, suit was instituted for their value.

The constitutionality of the statute, as applied to judgments entered prior to its enactment, was upheld in Pennsylvania Co. for Insurances on Lives and Granting Annuities v. Scott, 1942, 346 Pa. 13, 29 A.2d 328. If the plaintiff's contention as to its application is right, he is entitled to recover the value of the securities sold by the pledgee after the principal debt was discharged. Schwab v. Continental-Equitable Title & Trust Co., 1938, 330 Pa. 540, 199 A. 150; Restatement, Security, § 37. The defendant opposes the plaintiff's claim with three arguments, two based upon the statute, one directed against the plaintiff's right to claim under it.

First it contends that the language of the Act shows that its sole function is to provide a means to determine the value of real estate which has been sold.[5] In this case, it continues, that value is not in dispute; $19,000 was the admitted fair market value, this sum was credited upon the judgment before applying the proceeds from the sale of the collateral.[6] Under such circumstances, it concludes, proceedings under the Act would have been futile and to require them is to give an absurd construction to the legislation.[7]

This is strong argument, but we think

---

[1] Defendant's answer in the court below alleged that the premises had been appraised for defendant on May 20, 1941, by Ralph M. Taylor in the amount of $18,750, and had also been appraised on May 27, 1941, by Wm. H. Quick & Bros., Inc., in the amount of $20,000.

[2] It provides inter alia that "Whenever any real property * * * is * * * sold, * * * to the plaintiff in execution proceedings and the price * * * is not sufficient to satisfy * * * the judgment, interest and costs and the plaintiff seeks to collect the balance due * * * [he] * * * shall petition the court * * * to fix the fair market value." "At any time prior to the [date set for] hearing [thereon] any respondent [debtor] or other person in interest may appear and answer * * *."

After a hearing the court shall determine the fair market value and direct the release of the debtor to that extent; if no controvertive evidence is submitted the value shall be fixed as the amount alleged in the petition.

"The plaintiff * * * shall file all petitions * * * not later than six months after the sale * * * : Provided * * * if the sale occurred prior to the effective date of [the] * * * act, the plaintiff shall file such petition within six months after the effective date of this act. In the event no petition is filed within such period, the debtor * * * shall be released and discharged of * * * liability to the plaintiff * * *."

Further, "It shall be incompetent for any debtor * * * at any time, either before or after or at the time of incurring any obligation, to waive the benefits of this act or to release any obligee from compliance with the provisions thereof. Any such waiver or release shall be absolutely void, unenforceable and of no effect."

[3] A registered letter dated September 19, 1941 advised plaintiff of the sale.

[4] Corn Exchange purchased the securities at the sale and within five days resold them for $3,783.07.

[5] Section 6 states that at the hearing "the only issue before the court shall be the fair market value of the property sold at the time of said sale * * *."

[6] Plaintiff moved for judgment on the pleadings in which defendant's answer alleged appraisals of $18,750 and $20,000 and sale and credit against the deficiency judgment for $19,000.

[7] Section 6 provides that after a hearing the court shall determine the fair market value and direct the release of the debtor to that extent; if no controvert-

not strong enough. Section 1 of the statute requires the creditor who "seeks to collect the balance due on said judgment" to petition the court having jurisdiction to fix the fair market value of the property. We think that Corn Exchange here was seeking to collect the balance due on its judgment when it subjected the collateral in its hands to sale.[8] Otherwise it had no business to deal with the securities in any way except to return them to the pledgor. It is true that the only issue before the court at the hearing upon the petition is the fair market value of the property sold, nevertheless the statute contemplates that such value shall be found as a result of the appropriate court proceedings. By Section 10 a debtor may not waive the benefits of the Act, and admissions in pleadings in this case as to the value of the premises at the time of sale are not to be taken as having that effect.

The categorical answer to the defendant's argument, we think, is found in the concluding unqualified words of Section 7. If no petition is filed within the prescribed period, "the debtor * * * shall be released and discharged of such liability to the plaintiff * * *." The judgment creditor here did not file the petition provided for. Whether that was because it believed this statute would be, like its predecessors, declared unconstitutional, or for some other reason, the record does not indicate. At any rate, it did not so petition, and the statute itself states the consequences of that omission in the language just quoted.

■ The second point made by Corn Exchange is that at the time it sold the securities its claim against the judgment debtor was in force, so that the sale was proper. The statute became effective July 16, 1941. The sale was September 26, 1941. It was, therefore, prior to six months from the effective date of the Act, the period in which Corn Exchange could have proceeded by petition.[9] It is only at the expiration of that six months, argues Corn Exchange, that the provision of Section 7

providing for release and discharge of liability becomes effective.

This argument does not convince us, although its ingenuity is granted. We think the whole purpose of the statute was to make the outlined procedure on petition the requisite before other steps to enforce further collection of the claim after the sale of the real estate could be followed. What the creditor loses at the end of the six months' period is the right to take the further steps for collection. If the debtor sought to recover a voluntary payment made during that period, (instanced by the defendant in argument) the question would not be the same and the troublesome problem of recovery of money paid under mistake of law would be involved. See Restatement, Restitution § 44 et seq. That, fortunately, is not before us here.

No Pennsylvania decision upon the precise point before us has been cited, nor have we found any. Defendant brings to our attention the California decision in Hatch v. Security-First Nat. Bank of Los Angeles et al., 1942, 19 Cal.2d 254, 120 P.2d 869. This involved an interpretation of Section 580a of the California Code of Civil Procedure, the pertinent part of which provides "Whenever a money judgment is sought for the balance due upon an obligation for the payment of which a deed of trust or mortgage with power of sale upon real property * * * was given as security, following the exercise of the power of sale * * * the plaintiff shall set forth * * *." The court quoted from the statute to indicate its limited scope. It was concerned only with actions to recover deficiency judgments after the security is exhausted. The court then distinguished those cases decided under the New York statute Section 1083-a, Civil Practice Act, which provides in the event of failure on the part of the mortgagee to move for a deficiency judgment within ninety days thereunder "the proceeds of the sale regardless of amount shall be deemed to be in full satisfaction of the mortgage debt * * *."

---

ing evidence is submitted, the value shall be fixed as the amount alleged in the petition.

8 Corn Exchange argues that the Act is applicable only where the creditor is seeking an additional legal remedy against the debtor personally. The wording of the statute is too broad to admit such a

narrow construction in the absence of authoritative state decision expressly so limiting it.

9 Sec. 7 provides that "if the sale occurred prior to the effective date of this act, the plaintiff shall file such petition within six months after the effective date of this act."

■ The Pennsylvania statute, unlike that of California, states that where "the plaintiff seeks to collect the balance due on said judgment, interest and costs * * * [he] shall petition the court * * *." We do not think these words are equivalent to those in the California statute which talk of seeking "a money judgment * * * for the balance due." The "balance due" in the Pennsylvania statute is not restricted to a money judgment. It may, but does not necessarily refer to a deficiency judgment. Realization of the "balance due" can come from the sale of collateral, and selling collateral is collecting the balance due, as we have already said. We conclude, therefore, that the California decision is not helpful in our question under the Pennsylvania statute.

■ Finally, the argument is made that Auerbach is estopped from asserting his rights. This was the ground upon which the District Court granted the defendant's motion for judgment. No contention is advanced that Auerbach made any express representation upon which Corn Exchange relied. The only facts out of which the estoppel argument can be spelled are these: Corn Exchange notified Auerbach by registered letter dated September 19, 1941, that it would sell the collateral on September 26. Auerbach made no response until the bringing of this action in December, 1942, long after the period in which Corn Exchange could have petitioned under the statute had expired. His failure to speak up in protection of his rights when they were threatened, it is contended, should preclude him from asserting them now.

There is no doubt that in some situations an estoppel may arise when one fails to assert his rights. Ewart puts as the simplest case of estoppel, that of "standing by while some one sells your property to an innocent purchaser. You are estopped." Ewart on Estoppel (1900) 33. This situation, in varying sets of fact has been recognized frequently in the Pennsylvania decisions. Little v. William F. Fearon & Co., 1916, 252 Pa. 430, 97 A. 578; Redmond v. Excelsior Saving Fund & Loan Ass'n, 1900, 194 Pa. 643, 45 A. 422, 75 Am.St.Rep. 714; Cumberland Valley Railroad Company v. McLanahan, 1868, 59 Pa. 23. It was appropriately applied in Re Gibson's Estate, 1943, 153 Pa.Super. 413, 34 A.2d 159 relied upon by the court below. There the

person against whom it was applied had had possession of a will for many years. But the fact was not disclosed until another, administrator of the estate and decedent's sole heir at law, had made personal payments to creditors of the decedent but had not taken the steps within the statutory period, to preserve his rights against the real estate. The court properly said that the silence and concealment misled the administrator and precluded the assertion of otherwise well founded legal rights.

But the well established rule just mentioned does not fit the facts of this case. Here both parties necessarily knew of the fact of the pledged collateral. Each had equal knowledge of the passage of the deficiency judgment statute and its provisions. Neither could know until the Supreme Court of Pennsylvania decided the question, whether the statute would be upheld as constitutional or not. That the legal question was doubtful is shown by the divided vote of the court in the decision which upheld the Act. If the statute did not limit the rights of Corn Exchange, the sale by it was entirely within its rights. If the statute was effective, its provisions controlled. While the question was thus a legally doubtful one, Corn Exchange went ahead with the sale. Promptly after the statute was upheld, the plaintiff started this suit. He had no facts in his possession at the time of the proposed sale which Corn Exchange did not also have. In this situation the Pennsylvania decisions have declared that no estoppel can arise. Bright v. Allan, 1902, 203 Pa. 394, 53 A. 251, 93 Am.St.Rep. 769; Tustin et al. v. Philadelphia & Reading Coal & Iron Co., 1915, 250 Pa. 425, 95 A. 595. Our conclusion is that the plaintiff in this case is not estopped to assert his rights under the statute.

The judgment of the District Court must, for the reasons above stated, be reversed. In connection with further proceedings, it will be noted that the parties have entered into a stipulation that " * * * in the event of the reversal by the Circuit Court of Appeals of the judgment of the lower court, judgment shall be entered in favor of the plaintiff against the defendant in such amount only as the plaintiff's claim exceeds the amount of the defendant's counterclaim, until the latter is finally adjudicated. Thereupon, the credit allowed for the counterclaim shall be ad-

justed in accordance with such final adjudication."

The judgment of the District Court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.