**MARINE MIDLAND BANK, Appellee,**

v.

**SURFBELT, INC., Techni/Lease Financial, Inc. and John H. Miller, and McKeesport National Bank and Pittsburgh National Bank, Garnishees.**

**Appeal of John H. MILLER.**

**No. 82–5605.**

United States Court of Appeals,
Third Circuit.

Argued May 9, 1983.
Decided Oct. 11, 1983.

Charles P. Falk (argued), Baskin & Sears, P.C., Pittsburgh, Pa., for appellee.

Robert O. Lampl, Edward A. Olds (argued), Pittsburgh, Pa., for appellants.

Before ADAMS and BECKER, Circuit Judges, and DEBEVOISE,* District Judge.

BECKER, Circuit Judge.

This diversity action requires us to determine the circumstances under which a guarantor may invoke the protections of Pennsylvania's Deficiency Judgment Act, 42 Pa. Cons.Stat.Ann. § 8103 (1982) (the "Act".) Specifically, the question presented is whether a guarantor can successfully invoke the Act where the creditor, after having foreclosed on a mortgage put up by the stockholders of the principal debtor to obtain a delay of the creditor's action against the principal debtor's property that secures the loan, fails to follow the Act's appraisal procedures. We conclude that the district court erred in holding that the Act was not applicable in this situation, and we therefore reverse.

### I.

On June 3, 1978, appellee Marine Midland Bank extended a $600,000 line of credit to Surftex, Inc. The line of credit was secured by Surftex's inventory, equipment, and accounts receivable, and was guaranteed by appellant John H. Miller and two corporations, Surfbelt, Inc. and Tech-

ni/Lease Financial Inc.[1] After drawing on the line of credit, Surftex defaulted in 1979.

After Surftex defaulted, Marine Midland commenced two separate actions to recover the amount advanced on the line of credit. One was a replevin suit brought in the state court against the collateral that secured the line of credit—Surftex's inventory, equipment, and accounts receivable. That suit was settled in June 1979, when Marine Midland entered into a forbearance agreement with Surftex's sole shareholders, George and Joan Karsnak. Pursuant to that agreement, Surftex was permitted to retain possession of its collateral for ninety days, and the Karsnaks gave Marine Midland a second mortgage on real property owned by them jointly and personally. The property was Surftex's principal place of business. When Surftex again defaulted, Marine Midland brought an action to foreclose on the mortgage. Following a judgment in its favor, Marine Midland bought the property for $1,457.63 at a sheriff's sale on July 6, 1981.[2] Despite the foreclosure and sale, the Karsnaks refused to surrender possession. When the bank filed an ejectment action, the Karsnaks challenged the validity of the sheriff's sale and contested the bank's title and right to possession. To date, the bank has been unable to obtain possession of the property.

In the meantime, the bank also brought a diversity suit in the District Court for the Western District of Pennsylvania against Miller and the two corporate guarantors. In 1981, the district court granted summary judgment for the bank against all defendants in the amount of $86,752.02, plus interest, costs, and attorneys' fees. This court affirmed, *Marine Midland Bank v. Surfbelt, Inc.,* 681 F.2d 807 (3rd Cir.1982). The bank then instituted proceedings in the district court to execute on its judgment against Miller. Miller, however, filed motions to

---

* Honorable Dickinson R. Debevoise, United States District Judge for the District of New Jersey, sitting by designation.

1. The record is unclear as to whether George Karsnak was also a guarantor.

2. The property was subject to a $48,000 first mortgage.

dismiss the execution proceeding and to declare the judgment against him satisfied. He argued that, because Marine Midland had failed to comply with the Deficiency Judgment Act's requirement that the bank file a petition to determine the fair market value of the Karsnak property within six months of its foreclosure purchase, the bank could not collect from him on the balance due on the Surftex line of credit.

The motions to dismiss the execution proceeding and to mark the judgment satisfied were heard on a stipulated record. On August 30, 1982, the district court denied the motions. Reasoning that the debt that led to the foreclosure on the Karsnak property was "independent" of Miller's obligation on the guarantee, the court held that the Act did not apply.

## II.

The relevant part of the Pennsylvania Deficiency Judgment Act provides:

(a) General Rule.—Whenever any real property is sold, directly or indirectly, to the judgment creditor in execution proceedings and the price for which such property has been sold is not sufficient to satisfy the amount of the judgment, interest and costs and the judgment creditor seeks to collect the balance due on said judgment, interest and costs, the judgment creditor shall petition the court having jurisdiction to fix the fair market value of the real property sold. The petition shall be filed as a supplementary proceeding in the matter in which the judgment was entered.

. . . .

(d) Action in absence of petition.—If the judgment creditor shall fail to present a petition to fix the fair market value of the real property sold within the time after the sale of such real property provided by section 5522 (relating to six months limitation), the debtor, obligor, guarantor or any other person liable directly or indirectly to the judgment creditor for the payment of the debt, ... may file a petition, as a supplementary pro-

ceeding in the matter in which the judgment was entered, in the court having jurisdiction, setting forth the fact of the sale, and that no petition has been filed within the time limited by statute after the sale to fix the fair market value of the property sold, whereupon the court, after notice as provided by general rule, and being satisfied of such facts, shall direct the clerk to mark the judgment satisfied, released and discharged.

There is no dispute that Marine Midland did not file a petition to determine the fair market value of the Karsnak property. This failure would warrant judgment for Miller, if the Act applies.

### A.

Marine Midland presents several arguments why the Act should not apply. Three of these can be dismissed without extensive discussion. First, the bank argues that the requirements of the Act are procedural, and therefore inapplicable in federal court under *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Under the Act, when a mortgagee purchases the real property subject to the mortgage at a foreclosure sale, the property is conclusively presumed to satisfy the underlying debt unless the creditor complies with the judicial appraisal requirement. This appraisal establishes the fair market value of the property. As the district court correctly noted, the right to this appraisal is a substantive right of judgment debtors. The Act therefore must be applied in this diversity action. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). We recognized this long ago in *Auerbach v. Corn Exchange National Bank & Trust Co.,* 148 F.2d 709 (3d Cir. 1945).

Marine Midland also argues that, because of the Karsnak resistance, which has prevented it from taking possession of the property, the six-month period for filing the petition has been tolled. Marine Midland argues that it therefore does not yet have a

duty to comply with the Act.[3] The district court offered several reasons, to which we subscribe, for rejecting this argument. First, as we noted in *Auerbach,* the language of the Act is absolute, admitting of no exceptions.[4] Indeed section 8103(e) does not even permit a debtor to waive its protections. If Miller may not waive the provisions of the Act, it would make no sense to allow the actions of the Karsnaks to create a waiver. *See Marine Midland Bank v. Surfbelt, Inc.,* Misc. No. 8536, slip op. at 4 (W.D.Pa. Aug. 30, 1982). In addition, the six-month period for judgment creditors to file petitions to determine value was provided "for the very reason that problems with the title might arise." *Id.* (citing *Shrawder v. Quiggle,* 256 Pa.Super. 303, 309, 389 A.2d 1135, 1138 (1978)). The decision of the Pennsylvania legislature that the appropriate period to clear up title disputes before filing a petition for appraisal is six months is binding on this court.[5]

■ Marine Midland's third argument that the Act is not applicable here is that, because the foreclosure action was an *in rem* proceeding, it could not and did not serve as the basis for a personal judgment against Miller, and that therefore the Act does not apply. Although Marine Midland is correct in characterizing the mortgage foreclosure as an *in rem* proceeding and in admitting that any deficiency resulting from the foreclosure could not itself serve

as the basis for securing a personal judgment against Miller, *see Meco Realty Co. v. Burns,* 414 Pa. 495, 497–98, 200 A.2d 869, 871 (1964), neither of these facts is relevant to the purposes of the Act. A Pennsylvania court has stated:

> A fair interpretation of the Deficiency Judgment Act, particularly in the light of its obvious purpose, is that its protection is applicable to proceedings to collect the balance due with respect to a judgment, even though the property was sold in an *in rem* proceeding.

*National Council of the Junior Order of United American Mechanics of the United States of North America v. Zytnick,* 221 Pa.Super. 391, 394, 293 A.2d 112, 114 (1972).[6] We therefore reject the argument that, under Pennsylvania law, the *in rem* nature of the mortgage foreclosure renders compliance with the Deficiency Judgment Act unnecessary.

### B.

Marine Midland's final argument is based on the contention that the Karsnak mortgage arose out of a transaction sufficiently independent of the original loan to Surftex, which Miller guaranteed, that Miller is not entitled to the protection of the Act in connection with his liability on the guarantee. The district court essentially agreed with Marine Midland's position. It found that the mortgage was given for an independent debt:

---

3. Marine Midland asserts that, because of the pending litigation concerning the property, it may get no value at all from the property, in which case the fair market value of the property is irrelevant.

4. In *Auerbach,* the bank argued that it was unnecessary to file a petition to determine fair market value when the value was undisputed and the property had already been sold by the Bank, with the amount credited to the original debt. The language of the Act, we held, does not make an exception for such cases. 148 F.2d at 711–712.

5. Marine Midland also contends that its inability to secure possession of the property rendered it incapable of obtaining the appraisal required by the Act. The bank made no apparent effort, however, to invoke judicial process to obtain an appraisal.

6. The facts of *Zytnick* are actually quite different from those of this case. In *Zytnick,* the only proceeding that had taken place was a foreclosure. Because there was therefore no outstanding personal judgment against which the proceeds of the foreclosure could be credited, the court held that a petition to determine fair market value was not yet necessary. The court went on to note, however, that "mortgagees who proceed by way of mortgage foreclosure and who have bought the property would be able to recover a deficiency only if they obtained a personal judgment and petitioned in *that* proceeding to fix fair value not later than six months after the sale of the property." 221 Pa.Super. at 394, 293 A.2d at 114. (Emphasis added).

The Karsnak mortgage was given approximately one year after the Bank's loan to Surftex. This mortgage was given as additional security and in consideration of the Bank's forebearance in replevying its collateral. The timing of and the consideration for the mortgage indicate it secures an indebtedness separate and distinct from that which Miller guaranteed. . . .

*Marine Midland,* slip op. at 5.

In support of the district court's holding, Marine Midland argues that this case is factually identical to *Freeman v. Greenberg,* 351 Pa. 206, 40 A.2d 457 (1945), and that this court is therefore bound by the decision of the Pennsylvania Supreme Court that the Act does not protect a guarantor in this situation. The opening paragraph of the opinion in Freeman gives an explanation of the facts of that case which is, at best, opaque:

> The defendant [Greenberg], who is the appellant, borrowed $7,000 from the bank of which plaintiff [Freeman] afterward became receiver, and delivered his note dated April 27, 1927, for the payment of the loan on demand; the note contained a warrant to confess judgment and recited the delivery, as collateral security, of a bond and mortgage made by Jacob Zussman in the sum of $8,500. In 1928, the bank foreclosed on the Zussman mortgage and at the sheriff's sale purchased the property for $50, thereafter carrying it as collateral for the loan to defendant.

*Id.* at 207, 40 A.2d at 457. Marine Midland and the district court read these facts as involving a mortgage put up by Zussman as security for the loan to Greenberg. We conclude, however, that the significant facts of *Freeman* are substantially different from those here, and that *Freeman* therefore does not control the outcome of this case.[7] In *Freeman,* Greenberg assigned to the bank a mortgage that he already held from Zussman, as security for the bank's loan to him. When the bank foreclosed on the Zussman mortgage, it did so because Zussman, not Greenberg, was in default. The bank's interests in foreclosing were in no way adverse to Greenberg; in foreclosing on the mortgage, the bank was essentially acting as Greenberg's agent or trustee. Because of the identity of interests between the bank and Greenberg, no petition to determine the value of the property was necessary to protect Greenberg's rights as a debtor.[8] Viewed in this light, the Pennsylvania Supreme Court's conclusion that the Act did not apply is inapposite here.

Because *Freeman v. Greenberg* is not dispositive, resolution of the case requires us to decide whether, on the facts of this case, a Pennsylvania court would find any reason for not applying the Deficiency Judgment Act, which is applicable on its face. Unless there is some principle that insulates a transaction such as that entered into between the Karsnaks and the Bank from the strictures of the Act, Miller, by virtue of the Act's literal terms, is relieved of his liability. The district court found such a principle in the notion of a "separate and distinct" transaction, holding that, because the arrangement between the Karsnaks and the Bank was separate and distinct from the original loan and guaranty agreement, the bank's failure to follow the Act's procedures was not fatal. To the extent that the application of that principle to this case derives from *Freeman v. Greenberg,* it is, for the reasons noted above, flawed.

The policy of the Deficiency Judgment Act is to protect debtors against the risk of a mortgagee obtaining a "double recovery." This occurs where a mortgagee purchases

**7.** Our understanding of the facts in *Freeman* is illumined and confirmed by an independent inspection of the record in that case.

**8.** In addition, the Act was not in force at the time of the foreclosure on the Zussman mortgage. Under the terms of the Act, as enacted in 1941, the appraisal proceeding could have been brought within six months of the enactment. Although the suit against Greenberg had been commenced by that time, and Freeman therefore could conceivably have asked for an appraisal, the temporal relationship between the suit against Greenberg and the enactment was purely fortuitous. Had the Act been in force when the Zussman mortgage was foreclosed, there would have been no need to seek an appraisal in order to enforce Greenberg's obligation.

the mortgaged property for less than fair market value at the foreclosure sale, and then proceeds against the debtor for the deficiency. *See Philip Green & Son, Inc. v. Kimwyd, Inc.,* 410 Pa. 202, 205, 189 A.2d 231, 232–33 (1963); *Union Trust Co. of New Castle v. Tutino,* 353 Pa. 145, 148, 44 A.2d 556, 558 (1945). Although the Act would clearly not protect a guarantor with respect to a truly "independent" debt (i.e., a debt that he had not guaranteed), there is nothing in the record in this case that indicates that the forbearance agreement created such a debt. The Act explicitly protects guarantors as well as principal debtors. In this case, Miller was liable on his guarantee for any amount by which the purchase price for the mortgaged property was less than the fair market value of that property. Miller therefore falls within the explicit protection of the Act, and was entitled to invoke that protection when Marine Midland failed to obtain the required appraisal.

Accordingly, the judgment of the district court must be reversed. The case will be remanded to the district court with directions to enter a judgment declaring Miller's debt to Marine Midland satisfied.