

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-1-1995

# Fed Home v Arrott Assoc

Precedential or Non-Precedential:

Docket 94-2119

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Fed Home v Arrott Assoc" (1995). *1995 Decisions.* Paper 204.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/204

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-2119


FEDERAL HOME LOAN MORTGAGE CORPORATION

v.

ARROTT ASSOCIATES, LTD.,
A PENNSYLVANIA LIMITED PARTNERSHIP;
BERNARD MILLER; MARC KNOPFLER,

Appellants


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 91-04461)


Argued June 27, 1995

BEFORE:  MANSMANN, GREENBERG, and SAROKIN, <u>Circuit</u> <u>Judges</u>

(Filed:  August 1,   1995)

Marvin Neiman (argued)
Neiman, Ginsburg & Mairanz
39 Broadway
25th Floor
New York, NY  10006

Attorneys for Appellants


Raymond A. Quaglia (argued)
Ballard, Spahr, Andrews &

Ingersoll

1735 Market Street
51st Floor

1

OPINION OF THE COURT

GREENBERG, Circuit Judge.

Arrott Associates, Ltd., Bernard Miller, and Marc Knopfler appeal from an order entered on October 14, 1994, fixing the value of a foreclosed and judicially sold property previously owned by Arrott at $1,000,000, and dismissing Miller's and Knopfler's counterclaim seeking an order marking as satisfied a personal judgment entered against them in the foreclosure proceedings. The appeal is only from the dismissal of the counterclaim. The case raises issues which seem to be of first impression under the Pennsylvania Deficiency Judgment Act, 42 Pa. Cons. Stat. Ann. § 8103 (1982) (the "Act").

## I. FACTUAL AND PROCEDURAL HISTORY

The action arises in the aftermath of a mortgage foreclosure on a property in Philadelphia, Pennsylvania. The plaintiff is the Federal Home Loan Mortgage Corporation ("FHLMC"), successor to the original mortgagee, and the defendants are the appellants, successors to the original mortgagor. Appellant Arrott Associates, Ltd., is a limited partnership in which Miller and Knopfler are the general partners. Arrott defaulted on the payments on the mortgage note, and consequently FHLMC instituted the foreclosure action in 1990.

2

FHLMC obtained a foreclosure judgment on April 3, 1992, in the district court authorizing a judicial sale of the mortgaged property and providing as follows:

> From the monies arising from the sale of the mortgaged premises, FHLMC is to be paid the sum of $2,494,991.51, together with per diem interest and default interest accrued from February 3, 1992, to the date of this Judgment, and any further costs and expenses incurred between January 27, 1992 and the date this Judgment is satisfied.

In an accompanying second judgment, which we shall call the personal judgment, the district court ordered the following:

> It is hereby ORDERED and DECREED that of the $2,494,991.51 referred to in the Judgment in Foreclosure, defendants, Arrott Associates, Ltd., Bernard Miller and Marc Knopfler are jointly and severally liable to the Federal Home Loan Mortgage Corporation for the sum of $223,288.33, together with per diem default interest accruing from February 3, 1992, to the date of this Judgment, and any further costs and expenses incurred between January 27, 1992 and the date this Judgment is satisfied.

The court entered the personal judgment because the mortgage secured a debt which was largely but not entirely nonrecourse. Thus, the personal judgment reflected the court's determination of the extent of appellants' personal liability.

At the foreclosure sale on March 1, 1994, FHLMC purchased the property for $800,000. Then on March 25, 1994, it moved in the district court for confirmation of the sale. While the appellants did not object to the motion for confirmation, they moved under the Act for an order compelling FHLMC to deliver a satisfaction of the foreclosure and personal judgments.

On June 24, 1994, the district court entered a memorandum and order confirming the sale and denying the

3

appellants' motion.  The court stated that under the mortgage and the note it secured, FHLMC could not have recourse against the appellants for the principal and interest, but that the appellants were personally liable for "default interest, late charges, attorney fees, real estate taxes, water/sewer rents paid by FHLMC, and operating expenses, totalling $223,288.33."[1]  In ruling that the sale had not satisfied the personal judgment, the court relied on the following paragraph of the mortgage:

> Notwithstanding the existence of any other security interests in the Property held by Lender or by any other party, Lender shall have the right to determine the order in which any or all of the Property shall be subjected to the remedies provided herein. <u>Lender shall have the right to determine the order in which any or all portions of the indebtedness secured hereby are satisfied from the proceeds realized upon the exercise of the remedies provided herein</u>.  (Emphasis added by district court.)

The court held that this paragraph allowed FHLMC to apply the proceeds from the sale of the property to the nonrecourse portion of the foreclosure judgment rather than to the personal judgment.

In addition, the court explained that under the Act a

---

[1] The court focused on the liability of Miller and Knopfler, apparently because as a practical matter Arrott's liability was not important.  However, inasmuch as the personal judgment was against all three appellants we will deal with them as a group.

4

judgment creditor who purchases real property at a price less than the amount of the judgment must petition the court within six months of the sale to fix the fair market value of the property sold before it can collect the balance of the judgment over such value. If the judgment creditor does not file the petition, the debtor is discharged from personal liability. By June 24, 1994, when the court rendered its opinion, FHLMC had not petitioned the court to fix the fair market value of the property sold but the appellants had not been discharged from personal liability as the six months had not expired. Furthermore, the court reasoned that to offset the purchase price of the property against the personal judgment would defeat the purpose of the Act and "would encourage a judgment creditor to bid only a nominal price for the property so as to avoid offsetting any of the judgment."

On August 24, 1994, FHLMC petitioned the district court under the Act to fix the fair market value of the property sold at $1,000,000. The appellants answered that a valuation hearing was unnecessary because FHLMC would not be entitled to a deficiency judgment inasmuch as its valuation of the property far exceeded their liability on the personal judgment and the balance of the debt reflected in the foreclosure judgment was nonrecourse. At the same time, the appellants counterclaimed for delivery of a satisfaction of the personal judgment.[2] On October

---

[2] Only Miller and Knopfler filed the counterclaim but as a matter of convenience we treat the appellants collectively as the counterclaimants. See note 1, supra.

5

14, 1994, the district court entered an order fixing the fair market value of the property at $1,000,000 for deficiency judgment purposes and dismissing the counterclaim. The district court did not render an opinion explaining the reason for the October 14, 1994 order, as it evidently relied on its June 24, 1994 opinion which allowed FHLMC to determine the order in which the portions of the secured debt would be satisfied by the proceeds obtained through the exercise of its foreclosure remedies. The appellants then appealed from the October 14, 1994 order.

The district court had jurisdiction pursuant to 12 U.S.C. § 1452(f), and we have jurisdiction pursuant to 28 U.S.C. § 1291. Inasmuch as no facts are in dispute and the appeal involves only questions of law, our review is plenary. Leo v. Kerr-McGee Chem. Corp., 37 F.3d 96, 99 (3d Cir. 1994). We apply Pennsylvania law, which the parties agree governs.

## II. DISCUSSION

We regard this appeal as involving nothing more than a straightforward application of the Act. With respect to the merits, we first point out that the personal judgment was not final upon its entry in the sense that FHLMC could execute on it. Rather, the personal judgment merely determined the extent to which FHLMC eventually could have recourse individually against the appellants for payment of the debt secured by the mortgage. Thus, the personal judgment indicated that the $223,288.33 for which the appellants were liable was a portion of the foreclosure

6

judgment of $2,494,991.51.  Accordingly, FHLMC has recognized that to obtain an enforceable judgment against the appellants it was obliged, as the district court indicated in its June 24, 1994 opinion, to follow the procedure in the Act.

Subsection (a) of the Act establishes what is called the "general rule" in deficiency judgment cases and reads as follows:

> Whenever any real property is sold, directly or indirectly, to the judgment creditor in execution proceedings and the price for which such property has been sold is not sufficient to satisfy the amount of the judgment, interest and costs and the judgment creditor seeks to collect the balance due on said judgment, interest and costs, the judgment creditor shall petition the court having jurisdiction to fix the fair market value of the real property sold.  The petition shall be filed as a supplementary proceeding in the matter in which the judgment was entered.

Subsection (b) deals with failure to notify the debtor of the valuation proceedings and is not material here.  Subsection (c) initially sets forth the procedure for establishing the fair market value of the property sold which we need not describe as the parties have agreed on a value of $1,000,000.  Subsection (c) then concludes as follows:

> After the hearing and the determination by the court of the fair market value of the property sold, the debtor, obligor, guarantor and any other person liable directly or indirectly to the judgment creditor for the payment of the debt shall be released and discharged of such liability to the judgment

7

> creditor to the extent of the fair market
> value of said property as previously agreed
> to by the judgment creditor or determined by
> the court, less the amount of all prior
> liens, costs, taxes and municipal claims not
> discharged by the sale, and also less the
> amount of any such items paid at the
> distribution on the sale, and shall also be
> released and discharged of such liability to
> the extent of any amount by which the sale
> price, less such prior liens, costs, taxes
> and municipal claims, exceeds the fair market
> value as agreed to by the judgment creditor
> or fixed and determined by the court as
> provided in this subsection, and thereupon
> the judgment creditor may proceed by
> appropriate proceedings to collect the
> balance of the debt.  (Emphasis added.)

It seems to us that the plain language of subsection (c) requires the appellants' release and discharge from liability under the personal judgment.  They are, after all, liable to the judgment creditor, FHLMC, for the payment of a debt set forth in the foreclosure judgment, as the $223,288.33 personal judgment partially duplicates the liability in the foreclosure judgment.[3]

---

[3]Of course, under Pennsylvania law, no deficiency judgment can issue from a judgment for mortgage foreclosure.

8

Furthermore, the $1,000,000 fair market value for the property sold far exceeds $223,288.33. Finally, FHLMC does not contend that the $1,000,000 must be reduced by "the amount of all prior liens, costs, taxes and municipal claims not discharged by the sale" or by the other deductions provided in subsection (c).

What considerations, then, could cause us to reject the above result? There is, of course, the provision of the mortgage we already have quoted allowing FHLMC to determine the "order in which any or all portions of the indebtedness secured [by the mortgage] are satisfied from the proceeds realized upon the exercise of the remedies provided [in the mortgage]." This provision, however, is plainly inapplicable because a credit against personal liability for the fair market value of the

---

> The sole purpose of the judgment obtained through an action of mortgage foreclosure is to effect a judicial sale of the mortgaged property. Once the foreclosure sale has taken place, the purpose of the judgment has been fulfilled and it is rendered <u>functus officio</u>. Useless resort to the Deficiency Judgment Act of 1941 to establish fair market value and thus the net amount of the deficiency can in no way change the nature of the judgment from a judgment de terris to one in personam.

Meco Realty Co. v. Burns, 200 A.2d 869, 871 (Pa. 1964); <u>see also</u> First Seneca Bank v. Greenville Distrib. Co., 533 A.2d 157, 161 (Pa. Super. Ct. 1987); <u>Kretschman v. Stoll</u>, 352 A.2d 439, 441 (Pa. Super. Ct. 1975). If, however, the mortgage was security for a loan that was evidenced by a note or bond and was created with recourse to other assets of the debtor, the creditor may recover the deficiency by obtaining a personal judgment on the note or bond and petitioning in that in personam proceeding for a fair value determination under the Act. <u>First Seneca Bank v. Greenville Distrib. Co.</u>, 533 A.2d at 161; <u>National Council of Junior Order of United Am. Mechanics v. Zytnick</u>, 293 A.2d 112, 114 (Pa. Super. Ct. 1972).

property sold is simply not an allocation of the "proceeds realized upon" the exercise of any remedy under the mortgage. This conclusion is obvious because if a property is sold for a nominal amount so that there are no proceeds to allocate, an obligor nevertheless must be released and discharged from liability to the extent of the fair market value of the property sold. Furthermore, even if we regarded the allocation of proceeds provision of the mortgage as applying to the credit for the fair market value of the property sold, it could not override subsection (c) so as to deny the appellants the release and discharge provided in that subsection because subsection (e) of the Act provides:

> Any agreement made by any debtor, obligor, surety or guarantor at any time, either before or after or at the time of incurring any obligation, to waive the benefits of this section or to release any obligee from compliance with the provisions hereof shall be void.

See also Marine Midland Bank v. Surfbelt, Inc., 718 F.2d 611, 614 (3d Cir. 1983). The credit for the fair market value of the property sold is thus an unwaivable benefit.

A second possible reason for deviating from a straightforward application of subsection (c) is that arguably our result does not further the legislature's intention in adopting the Act. We have recognized that the policy of the Act "is to protect debtors against the risk of a mortgagee obtaining a 'double recovery'" by purchasing the property for less then fair market value and pursuing the debtor for the deficiency, thereby recovering more than the debt amount. Marine Midland

10

Bank v. Surfbelt, Inc., 718 F.2d at 615-16.[4]  See also Cheltenham
Fed. Sav. and Loan Ass'n v. Pocono Sky Enter., Inc., 451 A.2d
744, 748 (Pa. Super. Ct. 1982).  In this case even if the
appellants are not released and discharged from liability to the
extent of the fair market value of the property sold and so
remain liable for the full amount of the personal judgment, FHLMC
cannot make a double recovery of the debt.  The $1,000,000 fair
market value, when added to the personal judgment of $223,288.33,
is far less then the foreclosure judgment of $2,494,991.51.  In
fact, FHLMC seems destined to suffer a large loss in this case
which our result will deepen.[5]

The arguably anomalous outcome flowing from application
of the Act in this case is attributable to the note and mortgage
providing for personal liability for less than the full amount of
the debt secured by the mortgage.  Thus, if the appellants had
been liable for the entire debt secured by the mortgage, a
deficiency judgment (with adjustments which we need not detail)
of $2,494,991.51 less $1,000,000, or $1,494,991.51 net, could
have been entered against them.  If they then paid the deficiency
judgment, FHLMC would be made whole, as the appellants' payment
when added to the value of the property would equal the amount of
the foreclosure judgment.

---

[4]We note that the Act by its terms is not limited to foreclosure
cases, though the litigation under it routinely involves
foreclosure actions.
[5]Of course, if we focus solely on the appellants' personal
liability and if the policy of the Act is to preclude a creditor
from making a double recovery with respect to a debt for which
there is personal liability, then our result is in harmony with
the policy of the Act.

In this case we could avoid our result, which arguably does not further the Act's purposes, by reading "debt" in the phrase "person liable . . . for payment of the debt" in subsection (c) to mean the entire debt. Under this construction, appellants would not be released and discharged to the extent of the fair market value of the property sold.

There are, however, several reasons why we will not read "debt" in subsection (c) to mean "entire debt." To start with, in ordinary parlance it would be thought that a person liable for payment of a portion of a debt is liable, in the words of the Act, for "payment of the debt." Second, FHLMC has not suggested in its brief or by its actions that a judgment debtor can obtain a release or discharge of the judgment to the extent of the fair market value of the property sold only if the debtor is liable for the entire debt secured by the mortgage. In fact, FHLMC's actions demonstrate that it believes exactly the opposite. If FHLMC thought that appellants could not obtain the benefit of the Act, then it would have been filing what it should have regarded as a useless petition when it asked the court to determine the fair market value of the property sold, as the court determines that value to ascertain the credit to be given a debtor against the judgment. Yet, as the district court indicated in its June 24, 1994 opinion, FHLMC "acknowledges that it cannot obtain a deficiency judgment against the defendants without first petitioning the court to set the fair market value of the property." Indeed, FHLMC concedes that it would not contend that if the value of the property sold exceeded the

12

amount of the foreclosure judgment that the appellants would be liable on the personal judgment. To the contrary, in its brief it indicates that if the "fair market value of the [p]roperty exceeded the amount of the judgment in [f]oreclosure" there would not be a deficiency "as a practical matter." Brief at 7.

There is a third reason why we will not read "debt" in subsection (c) to mean "entire debt." It is true that in this case, if appellants do not obtain a release and discharge to the extent of the fair market value of the property sold, FHLMC nevertheless will not make a double recovery of the entire amount due on the foreclosure judgment. But in another case, denial to a judgment debtor of a release and discharge to the extent of the fair market value of the property sold when the debtor is liable for only a portion of the debt, could enable a creditor to secure a double recovery. For example, a debtor might be personally liable for 90% of a debt secured by a foreclosed mortgage. Then at a judicial sale the creditor might obtain title for a nominal bid to a property equal or almost equal in value to the amount of the debt for which there was personal liability. In that situation the creditor nevertheless could execute on a personal judgment against the judgment debtor for 90% of the debt unless it was required to release and discharge the debtor for an amount equal to the fair market value of the property sold.[6] The Act

---

[6]A foreclosing creditor may be the only bidder at a sale, as it can bid up to the value of its judgment by using its judgment in place of cash. See Pa. R. Civ. P. 1149, 3133, and 3181. Thus, a foreclosing judgment creditor may be able to obtain title at a judicial sale for a nominal bid, as other potential bidders will recognize the futility of bidding against the creditor.

was intended to preclude that result. Consequently, a reading that "debt" means "entire debt" would in some cases frustrate the purpose of the Act.

There is a final rationale which could be advanced to avoid the literal application of the Act and to deny the appellants a release and discharge from the personal judgment. When appellants were seeking a discharge by reason of the $800,000 sale price prior to the district court fixing the valuation, the court in rejecting their application indicated that if the purchase price of the property was offset automatically against a personal liability, a judgment creditor would be encouraged "to bid only a nominal price for the property so as to avoid offsetting any of the judgment." FHLMC relies on this point on this appeal. The problem with this rationale to avoid the literal application of the Act is that under the Act the release and discharge of personal liability to the extent of the fair market value of the property sold is not dependent on the purchase price at a judicial sale. Thus, under the Act, the purchase price becomes germane only "to the extent" that, with certain adjustments, it exceeds the judicially-determined fair market value.

Consequently, the fact that a judgment creditor acquired the property for a nominal bid would not preclude a judgment debtor from being released and discharged from liability to the extent of the fair market value of the property sold. Accordingly, although a judgment creditor might make a nominal bid for the property, it would have little incentive to do so to

14

preserve its claim for personal liability against an obligor on the debt. Indeed, at most our opinion will discourage a judgment creditor from bidding more than the fair market value for a property, a possibility we do not regard as likely, as we think that, with or without our opinion, a judgment creditor would not be so foolish as to bid more for a property than its value. See Pleasant Summit Land Corp. v. Comm'r, 863 F.2d 263, 273-77 (3d Cir. 1988), cert. denied, 493 U.S. 901, 110 S.Ct. 260 (1989). Thus, we adhere to the plain language of the Act and conclude that the appellants are released and discharged from the personal judgment.

In view of the aforesaid conclusions, we will reverse the order of October 14, 1994, to the extent that it dismissed the counterclaim, and will remand the case to the district court for entry of an order marking the personal judgment against Miller and Knopfler satisfied.[7]

---

[7]While as a matter of convenience we have written this opinion referring to all three defendants as the appellants, which they are, see note 1, supra, we direct the personal judgment to be marked satisfied only as to Miller and Knopfler. Arrott, though originally seeking to have both the judgments against it marked satisfied, did not join in the later counterclaim seeking that relief and the appeal is from the dismissal of the counterclaim.

In their reply brief, appellants additionally request that the foreclosure judgment be marked satisfied because they believe that FHLMC is asserting on this appeal that they are personally liable under that judgment. We will not consider this request as it was not raised in the district court and, in any event, we are unaware of how a judgment creditor could assert that a defendant is personally liable on a foreclosure judgment. See note 3, supra. Of course, we do not intend by our opinion to preclude the appellants from making any contentions they deem appropriate if FHLMC attempts to enforce personal liability against them under the foreclosure judgment.

15

FHLMC contends that the counterclaim was procedurally improper because the only issue before the district court when it filed its petition was the fair market value of the property and because the district court in its June 24, 1994 order already had rejected appellants' claim for satisfaction of the personal judgment. We reject these contentions, as we see no valid reason why the appellants should have been required to institute a separate proceeding to obtain relief. See Fed. R. Civ. P. 60(b)(5). Furthermore, the fair market value had not been set in June so that the appellants could not have relied on that valuation to obtain the release and discharge from liability when they made their initial application.

16